O

# UNITED  STATES  DISTRICT  COURT

# FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| **JANE MK DOE,** | **CASE NO. SACV 08-0582 AG (CWx)** |
| **Plaintiff,** | |
| **v.** | **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT** |
| **STARBUCKS, INC.; TIMOTHY HORTON,** | |
| **Defendants.** | |

In this case, an adult supervisor had a sexual relationship with a minor under his supervision while they were both employed by Defendant Starbucks, Inc. ("Starbucks"). Starbucks filed a Motion for Summary Judgment ("Starbucks's Motion").  Defendant Timothy

Horton ("Horton"), who was Plaintiff's supervisor, also filed a Motion for Summary Judgment ("Horton's Motion").   After considering the papers and arguments submitted, the Court GRANTS IN PART and DENIES IN PART Starbucks's Motion and GRANTS IN PART and DENIES IN PART Horton's Motion.

**PRELIMINARY MATTERS**

**1.    EVIDENTIARY OBJECTIONS**

The parties assert numerous evidentiary objections.  Resolution of some of these objections will impact the factual background of Starbucks's Motion and Horton's Motion. Thus, the Court will address important objections at the outset.

But the Court recognizes that many of the parties' objections concern issues that are not crucial to resolution of the motions.  In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised.  This is especially true when many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence.  Thus, the Court will address only objections to evidence that is central to the issues discussed in this Order.

**1.1    Starbucks's Objections**

Starbucks objects to paragraph 10 of Plaintiff's Statement of Material Facts ("PSMF"), which states that "Horton was 24-years-old when 16-year-old Doe began working [at Starbucks]; they worked together often."  Starbucks contends that "Plaintiff's and Horton's ages, and the fact that they often worked together at the Starbucks store are [not] material to any issues relevant to Starbucks['s] motion."  (Starbucks's Response to Plaintiff's Statement of Material Facts ¶ 10.)

1   This objection is OVERRULED.  For reasons that will become clear, the age discrepancy

2   between Plaintiff and Horton is relevant to many issues in this case.

3       Starbucks also objects to Plaintiff's statement that, "[m]y supervisor at Starbucks,

4   Timothy Horton, began asking me out in late 2005.  He would ask me out while we were

5   working at Starbucks, in the store and on the patio, while working and while on breaks.  I told

6   Horton that I did not want to go out with him because he was too old for me and I did not want

7   to see him . . . .  Tim Horton persisted asking me out during work hours, and I finally said 'yes,'

8   hoping it would make him stop – I agreed to meet him at the gym to work out."  (Doe Decl. ¶ 4.)

9   Starbucks objects to this statement "on the ground that it contradicts Plaintiff's prior deposition

10   testimony" where she "said nothing about harassing requests to go out with him" and "testified

11   that she wanted to have sex with him."  (Starbucks's Objections to Plaintiff's Evidence

12   ("Starbucks's Objs.") 4:22-5:5.)  This objection is OVERRULED.

13       Ninth Circuit law does not support sustaining Starbucks's objection.  "[A] party cannot

14   create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v.*

15   *Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  But plaintiffs may freely augment and

16   explain their deposition testimony with facts that were not previously discussed.  *See Messick v.*

17   *Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

18       The portion of Plaintiff's Declaration under objection is not inconsistent with her

19   deposition testimony.  *See Kennedy*, 952 F.2d at 266-67.  Plaintiff's testimony that she at some

20   point wanted to have sex with Horton does not establish that she *always* wanted to have sex with

21   him.  The record shows that Plaintiff began working with Horton in July 2005, but did not

22   engage in sexual activity with him until November or December 2005.  Even though Plaintiff

23   later said that she wanted to have sex with Horton, she was a minor who was susceptible to

24   manipulation and coercion.  It is possible that Plaintiff's stated desire to have sex with Horton

25   was the product of his coercive conduct.  Accordingly, Plaintiff's statements in her declaration

26   that she initially rejected Horton's requests do not contradict her earlier deposition testimony.

27       Starbucks next objects to paragraph 17 of the Doe Declaration, where Plaintiff states that,

28   "in the store while we were working, and on the patio while we were working, in front of

1    [coworkers]," Horton made numerous, "perhaps hundreds," of explicit and often profane

2    expressions of his desire to engage in sexual activity with her.  (Starbucks's Objs. 9:9-10:8.)

3    Starbucks argues that paragraph 17 contradicts Plaintiff's deposition testimony where she

4    "testified about two sexually explicit comments that Horton made to her while they were

5    working at the Irvine Starbucks, and specifically stated that she could not recall any others."

6    (Starbucks's Objs. 9:27-10:1.)  This objection is OVERRULED concerning all of paragraph 17

7    except Plaintiff's statement that Horton said "I like to f*** sixteen year olds" while he and

8    Plaintiff "were on the patio, surrounded by approximately four Starbucks employees."  (Doe

9    Decl. ¶ 17.)

10           Though Plaintiff testified that she could not recall any sexually explicit comments by

11   Horton other than the ones she identified during her deposition, it is possible that Plaintiff

12   merely forgot similar statements that were made, and later recalled those statements after she had

13   more time to reflect.  But Plaintiff's assertion that Horton said "I like to f*** sixteen year olds"

14   in front of coworkers is different than the other statements alleged in paragraph 17.  This

15   statement should have been particularly memorable to Plaintiff.  It is the only statement that

16   would explicitly identify Horton's desire to have sex with minors.  Further, Plaintiff claims that

17   it was made in front of coworkers, which contradicts her testimony that she and Horton

18   concealed their relationship from their coworkers.  Thus, the Court SUSTAINS the objection to

19   the statement in paragraph 17 that Horton said "I like to f*** sixteen year olds" in front of

20   coworkers.

21           Starbucks also objects to Paragraph 20 of the Doe Declaration, which states that Horton

22   "demanded that I perform oral sex on him, which I did.  I felt like I had to – that I had no choice.

23   . . . I felt that, because he had given me marijuana and I had smoked it with him, I had to do

24   what he said, because he was my Supervisor and I didn't want to lose my job."  (Doe Decl. ¶

25   20.)  Starbucks argues that "Plaintiff's assertion that she felt coerced to have oral sex with

26   Horton because she feared losing her job is conclusory and not supported by any evidence."

27   (Starbucks's Objs. 12:26-28.)  This objection is OVERRULED.  Plaintiff's statement is not

28   conclusory.  It is a factual assertion that it is not contradicted by Plaintiff's deposition testimony.

1  Starbucks contends that, "[t]o survive summary judgment in a sexual harassment case, a plaintiff

2  'must present more than conclusory allegations that the supervisor proposed a sexual liaison and

3  the employee responded to the overtures in order to protect her employment interests.'"

4  (Starbucks's Objs. 12:28-13:4 (quoting *Holly D. v. Cal. Institute of Tech.*, 339 F.3d 1158, 1174

5  (9th Cir. 2003)).)  But Plaintiff provides more than a conclusory allegation here, so her statement

6  is admissible.

7      Finally, Starbucks objects to the statements of Adam Cohen ("Cohen"), an assistant

8  manager who worked with Plaintiff and Horton, that he had "solid evidence" a month to six

9  weeks before Plaintiff left the store that something "very extracurricular" was going on between

10  her and Horton.  (Starbucks's Response to Plaintiff's Statement of Material Facts ¶ 46.)  Cohen's

11  statements come from a police report that was recorded by a police officer.  Starbucks argues,

12  among other things, that "the testimony . . . is inadmissible hearsay evidence for which there is

13  no exception."  The Court agrees with Starbucks's hearsay argument and SUSTAINS this

14  objection concerning Cohen's statements in the police report.  *See Colvin v. U.S.*, 479 F.2d 998,

15  1003 (9th Cir. 1973) ("Entries in a police report based on an officer's observation and

16  knowledge may be admitted, but statements attributed to other persons are clearly hearsay. . . .").

17

18      **1.2    Horton's Objections**

19

20      Horton objects to the statement in Plaintiff's declaration that she was "being pursued by

21  Horton against her protestations."  (Horton Reply 6:12-13.)  He argues that "Plaintiff painted the

22  exact opposite picture in" a letter where she wrote that they kissed at the gym, and that after "the

23  kiss at the gym, she would try to see him every chance that [she] got."  (Stoner Decl. Ex. 2.)

24  According to Horton, "[i]t must be concluded when juxtaposing Plaintiff's declaration with [this]

25  letter, that the . . . declaration is a sham."  (Horton Reply 6:15-16.)  This objection is

26  OVERRULED.  The sham affidavit rule does not apply where the party's declaration contradicts

27  prior *unsworn* words.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999); *Shockley

28  v. City of Newport News*, 997 F.2d 18, 23 (4th Cir. 1993).  Here, Plaintiff's letter was not sworn

5

testimony.  Thus, the fact that Plaintiff's later statements contradict the letter does not make the later statements inadmissible.

Horton also makes similar objections to other parts of the Doe Declaration that he contends are contradicted by Plaintiff's earlier written letters.  Since none of the letters were sworn statements, these objections are likewise OVERRULED.

**2.     REQUEST FOR JUDICIAL NOTICE**

In support of Horton's Motion, Horton requests that the Court take judicial notice of four documents: (1) Alabama Code § 13A-70; (2) Utah Code 76-5-401; (3) the statutory references and associated state laws referenced in the article: "Statutory Rape: A Guide to State Laws and Reporting Requirements by the Lewin Group"; and (4) California Penal Code Section 261.5. Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  Without addressing whether it is necessary to request judicial notice of state statutes, the Court finds that the documents at issue meet the requirements of Rule 201, and Horton's request for judicial notice is GRANTED.

**BACKGROUND**

The following facts are taken from evidence submitted by the parties.  In this summary judgment, these facts are viewed in the light most favorable to Plaintiff, and some of these facts are disputed.  Further, the Court omitted some evidence offered by Defendants that might be relevant at trial but does not impact resolution of Defendants' motions.  Thus, the following facts

are not necessarily true and do not establish that Plaintiff will succeed on her claims that ultimately proceed to trial.

### 1.    PLAINTIFF AND HORTON

Plaintiff was 16 when she was hired by Starbucks in July 2005.  (Starbucks's Statement of Undisputed Facts ("SSUF") ¶ 1.)  Horton was 24.  (Plaintiff's Statement of Material Facts ("PSMF") ¶ 10.)  They often worked together.  (PSMF ¶ 10.)

The parties disagree about what happened between July 2005 and late 2005.  According to Plaintiff, Horton repeatedly asked her "to go out with him."  (Doe Decl. ¶ 4.)  She says she initially resisted.  (Doe Decl. ¶ 4.)  In Plaintiff's words, "Horton persisted asking me out during work hours, and I finally said 'yes,' [in late 2005] hoping it would make him stop – I agreed to meet him at the gym to work out."  (Doe Decl. ¶ 4.)

What started as a date to the gym developed into a sexual relationship.  The day after the gym, Plaintiff met Horton at Starbucks "and he walked [her] out to his car in the . . . parking lot."  (Doe Decl. ¶ 20.)  Plaintiff says:  "He gave me some marijuana, and we both smoked marijuana in his car.  Then he demanded that I perform oral sex on him, which I did.  I felt like I had to – that I had no choice. . . . I felt that, because he had given me marijuana and I had smoked it with him, I had to do what he said, because he was my Supervisor and I didn't want to lose my job."  (Doe Decl. ¶ 20.)

Plaintiff and Horton had many other sexual encounters.  They "engaged in . . . vaginal intercourse and oral copulation . . . almost daily, lasting through June 2006."  (PSMF ¶ 25.)  They exchanged explicit, sexual comments and text message at work.  (PSMF ¶ 20.)  They "smoked marijuana and had sex in his car" in the parking lot by Starbucks during work breaks.  (PSMF ¶ 25.)  They also had sex in houses and hotels.  (PSMF ¶ 26.)  Horton told Plaintiff not to tell anyone about their sexual relationship.  (PSMF ¶ 31.)

**2.      THE RESPONSE OF OTHER STARBUCKS EMPLOYEES**

Other Starbucks employees regularly saw Plaintiff and Horton together.  Lina Nobel, the store manager, suspected that they were "doing more than just hanging out."  (Nobel Depo. 124:7-11.)  Nobel discussed with Starbucks's human resources director Sarah Kelly ("Kelly") the possibility that Plaintiff was dating Horton, but no investigation occurred at that time.  (Nobel Depo. 89:13-15.)  An assistant manager, Kari Marsh, reminded Horton about Starbucks's dating policy and warned him that he could not date Plaintiff.  (SSUF ¶¶ 22, 24, 29-31.)  Horton said he understood this policy, and he denied dating Plaintiff.  (Nobel Depo. 64:21-65:3.)  Marsh "warned him that, if he was lying, it would be grounds for termination."  (Starbucks's Reply 20:13-18; SSUF ¶¶ 29-31.)   Also, a shift leader named Candice confronted Plaintiff about her contact with Horton outside of work, and Plaintiff did not deny it.  (Doe Depo. 277:12-17.)  Horton later "yelled at" Plaintiff for this exchange with Candice, (Doe Depo. 277:18-20), and Horton and Plaintiff denied that they were dating when confronted by others at Starbucks, (Marsh Depo. 166:16-167:20).

In February 2006, Plaintiff told her mother about her sexual relationship with Horton.  (PSMF ¶ 35.)  Her mother "informed Starbucks Management of the sexual activity between Horton and Doe, asking that they investigate and take steps to prevent it, protecting her daughter."  (PSMF ¶ 37.)  Nobel agreed "to make sure that [Plaintiff and Horton would] not have any contact until . . . she completed her investigation . . . ."  (JM Depo. 158:10-15.)

Nobel then made some inquiries concerning the statements of Plaintiff and her mother.  When she confronted Plaintiff about the situation, Plaintiff admitted she was having a sexual relationship with Horton.  (PSMF ¶ 39.)   While Horton still denied dating Plaintiff, Nobel did not ask Horton "whether he had had any type of sexual contact with [Plaintiff]," because she thought it was not her place to do so.  (Nobel Depo. 65:4-8.)  She did not make any credibility determination because she believed it was not her role to "pass judgment."  (Nobel Depo. 65:13-66:3.)  She initially did not believe that Starbucks's sexual harassment policy applied to Plaintiff's situation with Horton because, in her view, "there was no accusation that there was

8

1   harassment." (Nobel Depo. 71:15-18.) To Nobel's knowledge, there was never "a

2   determination made [by Starbucks] as to whether there was sexual contact between [Plaintiff]

3   and [Horton]." (Nobel Depo. 81:5-8.) Starbucks did not formally investigate the relationship

4   between Horton and Plaintiff. (Kelly Depo 91:2.)

5

6   **3.     AFTER FEBRUARY 2006**

7

8        Nobel later told Plaintiff's mother that she spoke to Horton and "he denied any

9   wrongdoing with [Plaintiff], . . . and if she fired him or terminated him, she was afraid that she

10   was going to have a wrongful termination claim on her hands." (JM Depo. 187:18-24.) Plaintiff

11   asked to be transferred to a different Starbucks store because she "felt like she had to." (PSMF ¶

12   40.) So Plaintiff was transferred. (PSMF ¶ 40.) Nonetheless, Plaintiff and Horton continued

13   seeing each other, though the frequency of their encounters decreased. (Doe Depo. 351:4-

14   352:1.) On one occasion, Plaintiff told the manager at the new Starbucks store about her

15   situation and cried to the new manager. (PSMF ¶ 51.) Horton met with Plaintiff near the new

16   store at least once. (Doe Depo. 348:13-17.)

17        Later in 2006, Plaintiff stopped working at Starbucks. (PSMF ¶ 59.) She enrolled in a

18   treatment facility out of state to address mental and emotional problems she was having. (PSMF

19   ¶ 59.)

20        Horton pleaded guilty to a criminal charge of unlawful sexual intercourse with a minor

21   under 18. (PSMF ¶ 63.)

22

23   **4.     THIS LAWSUIT**

24

25        Based on these facts and others, Plaintiff filed this lawsuit. Her Complaint asserted

26   several claims against both Defendants, which are numbered as follows: (1) negligence; (2)

27   negligent supervision; (3) negligent hiring/retention; (4) negligent failure to warn, train, or

28   educate; (5) intentional infliction of emotional distress; (6) sexual battery; (7) assault; (8) sexual

1   harassment; (9) gender violence; (10) constructive discharge in violation of public policy; (11)

2   unfair business practices; (12) sexual harassment – hostile work environment; and (13) failure to

3   take steps necessary to prevent sexual harassment.  She later dismissed her claims against Horton

4   for negligent supervision, negligent hiring and retention, negligent failure to warn, train or

5   educate, constructive discharge, and unfair business practices.

6

7   **LEGAL STANDARD**

8

9        Summary judgment is appropriate only where the record, read in the light most favorable

10   to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

11   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also*

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the

13   proof or defense of a claim, as determined by reference to substantive law.  *Anderson v. Liberty*

14   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a

15   reasonable jury could return a verdict for the nonmoving party." *Id*.  In deciding a motion for

16   summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

17   inferences are to be drawn in his favor." *Id*. at 255.

18        The burden initially is on the moving party to demonstrate an absence of a genuine issue

19   of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

20   then the non-moving party must produce enough evidence to rebut the moving party's claim and

21   create a genuine issue of material fact.  *Id.* at 322-23.  If the non-moving party meets this burden,

22   then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099,

23   1103 (9th Cir. 2000).

24

25

26

27

28

1  ## ANALYSIS

2

3  ## 1.   ISSUES OF CONSENT

4

5   Starbucks and Horton have each filed motions for summary judgment on the claims

6  asserted against them.  Some of the issues in the two motions overlap.  Others diverge.  The

7  Court will address Starbucks's Motion and will then turn to Horton's Motion.  But before

8  reaching the specifics of either motion, it will be helpful to address the parties' arguments

9  concerning whether Plaintiff had capacity to consent and actually did consent to Horton's

10  conduct.  Resolution of these arguments will impact multiple claims at issue, such as Plaintiff's

11  sexual harassment claim.

12

13   ### 1.1.   Whether a Minor Can Consent to Sex with an Adult

14

15   The parties dispute whether a person under 18 in California can legally consent to sex.

16  Defendants argue that they can, and the Court agrees.

17   California Penal Code section 261.5 ("Section 261.5") generally makes it a crime for a

18  person over 18 to have sexual intercourse with a person under 18.  Based on this statute, Plaintiff

19  argues that Section 261.5 "makes clear that Doe didn't have the capacity to consent to Horton's

20  sexual contact[.]"  (Opposition to Starbucks's Motion ("OSM") 16:8-9.)  Plaintiff's argument is

21  incorrect.

22   Section 261.5 does not make minors incapable of consenting to sex.  The California

23  Supreme Court explained:

24

25   In 1970, the Legislature created the crime of unlawful sexual
     intercourse with a minor (§ 261.5) and amended the rape statute (§
26   261) so that it no longer included sex with a minor in the definition
     of rape.  As a result, the circumstances surrounding sexual
27   intercourse with a minor became highly relevant, because this
     conduct might in some cases be a distinct and less serious crime than
28   rape, particularly where the minor engages in the sexual act

knowingly and voluntarily. (Compare § 261.5, subds. (b), (c), (d) [punishment for unlawful sexual intercourse with a minor] with § 264, subd. (a) [punishment for rape].) In making this change, the Legislature implicitly acknowledged that, *in some cases at least, a minor may be capable of giving legal consent to sexual relations*. If that were not so, then every violation of section 261.5 would also constitute rape under section 261, subdivision (a)(1). Of course, a minor might still be found incapable of giving legal consent to sexual intercourse in a particular case, but [the legislature] abrogate[ed] the rule that a girl under 18 is in all cases incapable of giving such legal consent[.]"

*People v. Tobias*, 25 Cal. 4th 327, 333-34 (2001) (emphasis added and citations omitted). While *Tobias* was a criminal case, the rule that "a minor may be capable of giving legal consent to sexual relations" has been extended to non-criminal cases. *See Donaldson v. Dept. of Real Estate of State of Cal.*, 134 Cal. App. 4th 948, 961-62 (2005).

Plaintiff cites *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006), for the proposition that minors have no capacity to consent to sex with adults. But *Oberweis* is a Seventh Circuit case that does not consider California law. Thus, statements in *Oberweis* that are contradicted by the California Supreme Court's statements in *Tobias* have little persuasive effect.

In conclusion, persons under 18 may, in some cases, have capacity to consent to sex with persons over 18. Whether a minor actually consented to sex is a more delicate question, but the Court cannot agree with Plaintiff that "a minor cannot legally consent to sexual intercourse with an adult." (OSM 17:19-20.)

### 1.2    Whether Plaintiff Consented to Horton's Conduct

While *Tobias* states that minors "*may* be capable of giving legal consent to sexual relations," the Court must address whether Plaintiff *actually* consented to Horton's conduct in this case. The parties submitted considerable evidence and objections on the issue. The Court finds that there is a triable factual issue concerning whether Plaintiff consented to Horton's conduct.

Plaintiff presents sufficient evidence for a reasonable jury to find that she did not consent

to Horton's conduct.  Plaintiff was 16 and Horton was her 24 year old supervisor.  While Defendants submit ample evidence that Plaintiff at times asked Horton for sex and had positive feelings toward him, Plaintiff submits evidence that she initially did not want to date Horton and only acquiesced after he persisted asking her out for months.  Further, Plaintiff submits evidence that Horton was aware that she was under the influence of alcohol and marijuana during many of their sexual encounters.  Considering this evidence, a reasonable jury could conclude that Plaintiff's acquiescence to sex with Horton resulted from Horton's manipulation and coercion.

It is certainly possible that a jury could find that Plaintiff consented to Horton's conduct. But since there is a genuine factual dispute on the issue, the Court cannot make this finding as a matter of law.

## 2.    STARBUCKS'S MOTION

### 2.1    Plaintiff's Negligence Related Claims

Plaintiff asserts four negligence related claims, including claims for (1) negligence; (2) negligent supervision; (3) negligent hiring/retention; and (4) negligent failure to warn, train, or educate.  Starbucks groups these claims together and argues that they must fail for the same reasons.  It contends that they should be dismissed because there is no evidence Starbucks knew of Plaintiff's relationship with Horton or had any reason to suspect that Horton would engage in wrongdoing "until Plaintiff's mother complained to store manager Lena Nobel in February 2006."  (Starbucks's Reply 19:26-28.)   This argument is unpersuasive.

Plaintiff presents sufficient evidence for a reasonable trier of fact to find that Starbucks should have known about Plaintiff's sexual relationship with Horton before her mother's complaint to Nobel.  In January 2006, Nobel suspected Plaintiff and Horton were "doing more than just hanging out," (Nobel Depo. 124:7-11), and she discussed with Kelly the possibility that the two were dating, (Nobel Depo. 89:13-15).  Yet neither of them made thorough inquiries into the situation.  Even after Plaintiff was transferred to a different store, Starbucks did not perform

1    a formal investigation, did not discipline Horton, and did not seek "to ensure that Horton had no

2    further contact with [Plaintiff]." (OSM 21:12-16.) Under these circumstances, a reasonable jury

3    could find that Starbucks was negligent.

4         Starbucks also argues that Plaintiff "cannot show any causal link between Starbucks['s]

5    alleged negligence in hiring, retaining, training, or supervising Horton and [Plaintiff's] alleged

6    injuries." (Starbucks's Mot. 1:22-24.) More particularly, Starbucks contends that Plaintiff's

7    continuance of the relationship with Horton "once she was transferred to a different store severs

8    any possible causal link; Plaintiff would have continued the relationship even if Horton had been

9    terminated from employment." (Starbucks's Mot. 8:25-27.) The Court disagrees. While

10   causation will undoubtedly be an issue at trial, Plaintiff has presented sufficient evidence to

11   withstand summary judgment.

12        Starbucks does not make particularized attacks on Plaintiff's different negligence related

13   claims, and those claims survive Starbucks's Motion.

14

15   **2.2    Plaintiff's Claims for Assault, Battery, and Intentional Infliction of Emotional**

16   **Distress**

17

18        Plaintiff asserts claims for assault, battery, and intentional infliction of emotional distress

19   against Starbucks. Starbucks argues that "none of Plaintiff's intentional tort claims . . . can

20   survive summary judgment because no basis exists for holding Starbucks liable for Horton's

21   alleged intentional wrongdoing." (Starbucks's Mot. 1:25-27.) Plaintiff argues that Starbucks's

22   "failure to investigate or take remedial action against Horton amounts to ratification of Horton's

23   sexual abuse of [Plaintiff]" sufficient to maintain claims for assault, battery, and intentional

24   infliction of emotional distress. (OSM 21:20-21.) The Court finds that a triable issue of fact

25   exists concerning whether Starbucks ratified Horton's conduct, so these intentional tort claims

26   survive Starbucks's Motion.

27        An employer may be liable for the intentional torts of an employee under a theory of

28   ratification if "the employer, after being informed of the employee's actions, does not fully

14

1    investigate and fails to repudiate the employee's conduct by redressing the harm done and

2    punishing or discharging." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 621

3    (1989).  But where the employer repudiates wrongful conduct, courts will not find ratification.

4    *Coll. Hosp., Inc. v. Superior Court*, 8 Cal. 4th 704, 726 (1994).

6          Ratification is a question of fact. The burden of proving ratification
7          is upon the party asserting its existence. But ratification may be
           proved by circumstantial as well as direct evidence. Anything which
8          convincingly shows the intention of the principal to adopt or approve
           the act in question is sufficient. . . .  It may also be shown by
9          implication. . . . [W]here an agent is authorized to do an act, and he
           transcends his authority, it is the duty of the principal to repudiate
10         the act as soon as he is fully informed of what has been thus done in
           his name, . . . else he will be bound by the act as having ratified it by
           implication.

13   *Streetscenes v. ITC Entm't Group, Inc.*, 103 Cal. App. 4th 233, 242 (2002) (citation and

14   quotation marks omitted).

15         Starbucks argues that there can be no dispute that it repudiated Horton's conduct.  To

16   support this argument, Starbucks submits evidence that Marsh, an assistant manager, reminded

17   Horton about Starbucks's dating policy and warned him that he could not date Plaintiff.  (SSUF

18   ¶¶ 22, 24.)  Further, when Horton denied dating Plaintiff, Marsh told him that he could be fired

19   if Starbucks found out that he was lying.  (Starbucks's Reply 20:13-18; SSUF ¶¶ 29-31.)

20   According to Starbucks, this evidence supports a finding that Starbucks repudiated Horton's

21   conduct.

22         Plaintiff disputes Starbucks's position that its actions were reasonable, and provides

23   sufficient evidence to support a reasonable finding that Starbucks ratified Horton's conduct.

24   After Nobel learned that Horton and Plaintiff were having sex, Plaintiff was transferred to

25   another Starbucks store.  But it is not clear that Starbucks "fully investigate[d]" the situation or

26   "repudiate[d] Horton's conduct by redressing the harm done and punishing or discharging

27   [him]." *Fisher*, 214 Cal. 3d at 621.  As Plaintiff establishes, no formal investigation

28   occurred, and Horton was not fired, demoted, or formally reprimanded for his conduct.  Further,

1   Starbucks's argument in its Reply reinforces Plaintiff's argument that Starbucks's did not

2   properly address the situation between Plaintiff and Horton.  Starbucks still believes that

3   Horton's "violation of Penal Code section 261.5 was a matter for the police, not Starbucks."

4   (Starbucks's Reply 17:22-23.)

5          Under these circumstances, a triable issue of fact exists concerning whether Starbucks

6   ratified Horton's conduct.  Plaintiff's claims against Starbucks for assault, battery, and

7   intentional infliction of emotional distress will not be dismissed.

8

9          **2.3     Plaintiff's Claim for Gender Violence**

10

11         Plaintiff asserts a claim for "gender violence" against Starbucks under California Civil

12   Code section 52.4 ("Section 52.4").  Again, this claim is made under a theory that Starbucks

13   ratified Horton's conduct.  But Section 52.4(d) states, "[n]otwithstanding any other laws that

14   may establish the liability of an employer for the acts of an employee, this section does not

15   establish any civil liability of a person because of his or her status as an employer, unless the

16   employer personally committed an act of gender violence."  This language shows that Starbucks

17   may not be liable for gender violence under a ratification theory.

18         Plaintiff disagrees.  She argues that "[a]n employer is considered to have personally

19   committed an act of gender violence, however, if it ratifies the gender violence committed by

20   one of its employees."  (OSM 23:4-5.)  To support this argument, Plaintiff cites a statement in

21   *Fretland v. County of Humboldt*, 69 Cal. App. 4th 1478, 1489-90 (1999), a case not involving

22   Section 52.4 that "an employer can be held civilly liable as a joint participant in assaultive

23   conduct committed by its employee pursuant to the doctrine of ratification."

24         Plaintiff's argument is not persuasive.  The statement in *Fretland* that an employer may be

25   "*held civilly liable* . . . for assaultive conduct" under the doctrine of ratification does not mean

26   that an employer who ratifies an act of gender violence "*personally committed*" the act as

27   required by Section 52.4.

28

16

1    Section 52.4 does not permit Plaintiff's gender violence claim against Starbucks, and that

2    claim will be dismissed.

3

4    **2.4     Plaintiff's Claims for Sexual Harassment**

5

6    Plaintiff asserts two claims related to sexual harassment, including a claim for violation of

7    California Civil Code section 51.9 ("Section 51.9") and a claim for hostile work environment

8    sexual harassment under California's Fair Employment and Housing Act ("FEHA").

9    Starbucks argues that "Section 51.9 does not apply to workplace harassment."

10   (Starbucks's Mot. 2:7.)  Plaintiff does not oppose the Motion concerning the claim for violation

11   of Section 51.9, so this claim will be dismissed.

12   Starbucks next argues that Plaintiff's claim for hostile work environment sexual

13   harassment should be dismissed because "(1) Starbucks cannot be liable for sexual conduct that

14   occurred in a non-work-related context[,] and (2) the only work-related conduct that Plaintiff has

15   identified was welcomed by her and does not, in any event, rise to the level of severity and

16   pervasiveness necessary to create a hostile work environment."  (Starbucks's Mot. 2:7-11.)

17   Starbucks's arguments are not persuasive.

18   Under the FEHA, employers are liable for damages that an employee incurs due to

19   another employee's sexual harassment.  *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1046

20   (1996) (citing Cal Gov. Code § 12940(j)(1)).  But the employee must be acting in the scope of

21   the employment relationship for this rule to apply.  *Capitol City Foods, Inc. v. Superior Court*, 5

22   Cal. App. 4th 1042, 1047-48 (1992).

23

24       Whether an employee is acting within the scope of his employment
         is generally a question of fact; however, if the undisputed evidence
25       would not support an inference that the employee was acting within
         the scope of his employment, it becomes a question of law.  . . .  The
26       scope of employment is viewed broadly and may cover acts outside
         the ultimate object of employment; the employer is not liable,
27       however, if the employee substantially departs from his duties for
         purely personal reasons.

28

17

1

2        *Id.* at 1048.

3           Starbucks relies heavily on *Capitol City Foods* and summarizes the relevant facts of that

4        case well:

5

6                 [T]he plaintiff sued for harassment, claiming that she had been told

7                 by her supervisor to get into his car and accompany him to his

8                 residence. . . . She admitted that she never objected. . . . Once at

9

10

11

12

13

1

2    *Id.* at 1048.

3       Starbucks relies heavily on *Capitol City Foods* and summarizes the relevant facts of that

4 case well:

5

> [T]he plaintiff sued for harassment, claiming that she had been told
> by her supervisor to get into his car and accompany him to his
> residence. . . . She admitted that she never objected. . . . Once at
> his residence, she claimed that he raped her. . . . On appeal from
> summary judgment for the employer, the Court of Appeal affirmed,
> holding that the employer was not liable for the alleged rape. . . .
> The undisputed evidence established that the plaintiff had met and
> gone with the supervisor willingly, and did not object until she was
> at his house. . . . This was true even though the supervisor set up the
> 'date' at work, she was wearing her work uniform, and the
> supervisor used his authority to excuse her from work so she could
> leave with him.

(Starbucks's Mot. 16:16-25.)  Starbucks argues that "[w]hat destroyed the connection between

the rape and workplace in *Capital City Foods* were the acts the plaintiff did voluntarily, *i.e.*

going with the rapist.  Likewise, Plaintiff's choice to go voluntarily with Horton to places where

they had sex destroys any connection between the sex and the workplace." (Starbucks's Mot.

17:1-4.)

      Starbucks's logic is faulty.  It's true that the plaintiff's voluntary acts destroyed the

connection with the workplace in *Capital City Foods*.  But there is an issue of fact in this case

concerning whether Plaintiff's acts with Horton were voluntary.  To be sure, they were voluntary

in the sense that he did not physically force her to do anything.  But as the Court discusses in

Section 1.2, a reasonable jury could find that Plaintiff's acquiescence to Horton's advances

resulted from his manipulation and coercion, and not Plaintiff's willing consent.  Since a

reasonable jury could also find that this manipulation and coercion stemmed directly from

Horton's role as Plaintiff's supervisor, a sufficient connection with the workplace is established,

and Starbucks's analogy to *Capital City Foods* fails.

1    Starbucks also quotes a California appellate case which states that "[t]he employer is not

2    strictly liable for a supervisor's acts of harassment resulting from a completely private

3    relationship unconnected with the employment and not occurring at the workplace or during

4    normal work hours." *Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1421 (2007)

5    (emphasis added). But here, Starbucks cannot conclusively show that the relationship between

6    Plaintiff and Horton is unconnected with their employment. *See Doe v. Capital Cities*, 50 Cal.

7    App. 4th 1038, 1048 (1996) (while "the offending conduct may and often does occur at the place

8    of work, it need not. Unwelcome sexual conduct perpetrated by an agent, supervisor, or co-

9    worker, which occurs elsewhere but is in some fashion work-related also constitutes sexual

10   harassment within the meaning of the Act.").

11   Starbucks also argues that Plaintiff's claim for sexual harassment must fail because

12   Plaintiff cannot "show that the harassment 'was sufficiently pervasive so as to alter the

13   conditions of employment and create an abusive working environment . . . .'" (Starbucks's Mot.

14   20:19-21 (quoting *Fisher*, 214 Cal. App. 3d at 608)). Under the circumstances, the Court finds

15   that triable issues of fact exist concerning this argument.

16   Plaintiff's claim for hostile work environment sexual harassment survives summary

17   judgment.

18

19   **2.5    Plaintiff's Claim for Failure to Prevent Sexual Harassment**

20

21   Starbucks next argues that Plaintiff's claim against it for failure to prevent sexual

22   harassment should be dismissed because "Plaintiff deliberately chose to hide her relationship and

23   declined to use the available measures that Starbucks had in place to prevent harassment."

24   (Starbucks's Mot. 2:13-15.) Further, Starbucks urges, "once Starbucks learned of the

25   relationship, it separated Plaintiff and Horton, which would have ended any harassment (if any

26   had occurred), but for Plaintiff's decision to continue seeing Horton in secret." (Starbucks's

27   Mot. 2:15-17.)

28

1    Plaintiff responds that "[t]riable issues of material fact exist regarding whether Starbucks

2    breached its obligation to take all reasonable steps necessary to prevent harassment from

3    occurring." (OSM 20:26-27.)  According to Plaintiff, Starbucks knew about her sexual

4    relationship with Horton and "breached its duty to take all reasonable steps to prevent" the

5    ongoing sexual relationship between Plaintiff and Horton.  (OSM 21:11-12.)  More specifically,

6    Plaintiff asserts that Starbucks "conducted no investigation, did not discipline Horton, continued

7    to employ Horton, and took no steps to try to ensure that Horton had no further contact with

8    Doe." (OSM 21:12-16.)  The Court agrees with Plaintiff that triable issues of fact exist

9    concerning her claim for failure to take reasonable steps to prevent sexual harassment.

10   Under California law, it is unlawful "[f]or an employer, labor organization, employment

11   agency, apprenticeship training program, or any training program leading to employment, to fail

12   to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

13   Cal. Gov't Code § 12490(k).  To prevail on a claim under Section 12490(k), Plaintiff must

14   establish (1) that she was sexually harassed, and (2) that Starbucks did not take reasonable steps

15   to prevent harassment.  *Id.*  The Court found in Section 2.4 that there is a triable issue of fact

16   concerning whether Plaintiff was sexually harassed, so Plaintiff satisfies the first requirement.

17   But Starbucks also disputes whether Plaintiff can meet the second requirement.

18   Starbucks argues that it took reasonable steps to prevent harassment because it "had an

19   Anti-Harassment Policy in place throughout Plaintiff's employment and avenues by which she

20   could complain about alleged harassment.  Plaintiff, however, used none of those procedures and

21   kept her relationship secret from Starbucks . . . ." (Starbucks's Mot. 21:20-24.)  While this

22   argument might be a strong one at trial, it does not compel dismissal of Plaintiff's claim on

23   summary judgment.

24   Section 12490(k) requires that an employer take all reasonable steps necessary to prevent

25   harassment.  In an analogous Title VII situation, the Ninth Circuit has held that "[o]nce an

26   employer knows or should know of harassment, a remedial obligation kicks in.  That obligation

27   will not be discharged until action - prompt, effective action - has been taken. Effectiveness will

28   be measured by the twin purposes of ending the current harassment and deterring future

20

1   harassment - by the same offender or others." *Fuller v. City of Oakland*, 47 F.3d 1522, 1528

2   (9th Cir. 1995) (citations omitted).  "The affirmative and mandatory duty to ensure a

3   discrimination-free work environment requires the employer to conduct a prompt investigation

4   of a discrimination claim." *Am. Airlines, Inc. v. Superior Court*, 114 Cal. App. 4th 881, 890

5   (2003), *reh'g denied and review denied* (2004).

6        Here, Plaintiff's evidence concerning Starbucks's investigation is sufficient to defeat

7   summary judgment on Plaintiff's claim for failure to prevent harassment.

8

9   **2.6    Plaintiff's Claim for Constructive Discharge**

10

11       Starbucks argues that Plaintiff's claim against it for constructive discharge fails.  The

12   Court agrees.

13       "Constructive discharge occurs when the employer's conduct effectively forces an

14   employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994).

15

16            The conditions giving rise to the resignation must be sufficiently
             extraordinary and egregious to overcome the normal motivation of a
17            competent, diligent, and reasonable employee to remain on the job to
             earn a livelihood and to serve his or her employer. The proper focus
18            is on whether the resignation was coerced, not whether it was simply
             one rational option for the employee."
19

20   *Id*. at 1246.

21       Here, Plaintiff quit working at Starbucks and was sent out of state to receive treatment for

22   her mental and emotional problems.  But the undisputed testimony shows that Plaintiff enjoyed

23   working at Starbucks and did not want to quit.  (Doe Depo. 103:7-104:17.)  Since Plaintiff

24   wanted to continue working, no reasonable juror could find that work conditions were

25   "sufficiently extraordinary and egregious to overcome the normal motivation of a competent,

26   diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or

27   her employer." *Turner*, 7 Cal. 4th at 1246.  Even if pulling Plaintiff away from her job to send

28   her to out of state was a "rational option," Plaintiff's resignation was not coerced by Starbucks.

1   *Id.* Plaintiff argues that she "had to resign her employment in order to end Horton's sexual

2   abuse," (OSM 24:8), but this argument is too attenuated to show that Starbucks had "sufficiently

3   extraordinary and egregious" work conditions to support a claim for constructive discharge,

4   *Turner*, 7 Cal. 4th at 1246.

5         Plaintiff's claim for constructive discharge against Starbucks fails.

6

### 2.7    Plaintiff's UCL Claim

8

9         Starbucks argues that Plaintiff's claim against it under the UCL must fail because

10  "Plaintiff cannot obtain either injunctive relief or restitution under the UCL[,]" and "these are

11  the only remedies the UCL provides . . . ." (Starbucks's Reply 23:24-27.)  The Court agrees.

12        Plaintiff argues that restitution is appropriate because "Starbucks should be forced to

13  disgorge the profits it obtains by exploiting minor employees and ignoring its duty to investigate

14  sexual harassment." (OSM 23:19-21.)  The UCL's provision for restitution allows individuals to

15  "recover profits unfairly obtained to the extent that these profits represent monies given to the

16  defendant or benefits in which the plaintiff has an ownership interest." *Korea Supply Co. v.*

17  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003).  Restitution "compel[s] a UCL

18  defendant to return money obtained through an unfair business practice to those persons in

19  interest from whom the property was taken, that is, to persons who had an ownership interest in

20  the property or those claiming through that person." *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal.

21  4th 116, 126-27 (2000).  Here, it is undisputed that Plaintiff is not seeking the return of money

22  that she has given to Starbucks.  Accordingly, her request for restitution is inappropriate.

23        Plaintiff's request for an injunction similarly fails.  "[T]he general rule is that an

24  injunction may not issue unless the alleged misconduct is ongoing or likely to recur . . . ."

25  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 467 (2005).  Here, as Starbucks says, "[t]he

26  alleged wrongdoing in this case involves Plaintiff's relationship with Horton, but neither of them

27  are currently employed by Starbucks[, so] [t]he alleged wrongdoing, therefore, cannot recur."

28  (Starbucks's Reply 24:8-11.)  Further, Plaintiff provides no evidence that this type of

1   misconduct is widespread at Starbucks or took place in any case other than hers.  Thus, the Court

2   finds that injunctive relief is unavailable.

3        Since the only relief the UCL provides is unavailable here, Plaintiff's UCL claim fails.

4

5   **2.8    Plaintiff's Request for Punitive Damages**

6

7        Starbucks argues that Plaintiff's request for punitive damages must fail.  The Court

8   agrees.

9        Punitive damages may be recovered against a corporate employer if one of its officers,

10  directors, or managing agents "had advance knowledge of the unfitness of the employee and

11  employed him or her with a conscious disregard of the rights or safety of others or authorized or

12  ratified the wrongful conduct for which the damages are awarded or was personally guilty of

13  oppression, fraud, or malice."  Cal. Civ. Code § 3294(b).  A plaintiff must identify someone who

14  "exercises substantial discretionary authority over decisions that ultimately determine corporate

15  policy."  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999).

16       In this case, Plaintiff has not identified any such person from Starbucks.  Plaintiff's own

17  argument implies that no officer, director, or managing agent was involved in this case.  Plaintiff

18  asserts that "Starbucks cannot insulate itself by claiming that all of the company's actions were

19  through lower level employees – it chose to handle the allegation through such employees, and

20  chose to ignore the sexual abuse of one of its minor employees . . . ."  (OSM 25:18-22.)  But

21  Plaintiff fails to identify anyone at Starbucks who "exercise[d] substantial discretionary

22  authority over decisions that ultimately determine corporate policy."  *White*, 21 Cal. 4th at 573.

23       Accordingly, there is no triable issue of fact concerning punitive damages, and Plaintiff's

24  request for punitive damages fails.

25

26  **2.9    Conclusion**

27

28       Starbucks's Motion is GRANTED IN PART and DENIED IN PART.

**3.      HORTON'S MOTION**

**3.1      Plaintiff's Claim for Intentional Infliction of Emotional Distress**

Horton argues that Plaintiff's claim against him for intentional infliction of emotional distress must fail.  The Court disagrees.

In California, a plaintiff may make a prima facie showing of intentional infliction of emotional distress by establishing "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard [for] the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Bosetti v. U.S. Life Ins. Co.*, 175 Cal. App. 4th 1208, 1241-42 (2009) (internal quotation marks omitted and brackets in original).  Horton argues that Plaintiff fails to meet each of these elements.  The Court will discuss each element in turn.

3.1.1   Extreme and Outrageous Conduct

Horton argues that he has not engaged in extreme and outrageous conduct.  He states that "[a] sexual relationship between a 24 year old male and a very sexually experienced 16 year old female, while ill-advised, is not so extreme as to exceed all bounds usually tolerated in a civilized community."  (Horton Mot. 15:10-13.)  Plaintiff argues that whether Horton's conduct was extreme and outrageous is a fact issue, and the Court agrees.  It was certainly more than "ill-advised."

One California Court of Appeal has held that

> reasonable minds could certainly differ whether it is beyond the
> bounds of conduct to be tolerated in civilized society for a 48-year-
> old medical doctor to initiate and conduct an extended sexual

24

1
2

relationship with a minor while encouraging her to break the law by
providing her with alcohol and controlled substances and paying her
to purchase such substances for him.

3

4 *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1226 (1995).  While Horton is much

5 younger than the defendant in *Angie M.*, this difference does not defeat Plaintiff's argument.

6 Horton was eight years older than Plaintiff, and in a position to exert significant influence over

7 her.  He supplied her with drugs and alcohol and repeatedly engaged in illegal sexual activity

8 with her.  A reasonable jury could find that this conduct was extreme and outrageous.

9

10          3.1.2   Intent to Cause or Reckless Disregard for Extreme Emotional Distress

11

12          Horton argues that he did not intend to inflict extreme emotional distress on Plaintiff or

13 recklessly disregard the probability that such distress might occur.  While Horton might certainly

14 be correct, this is again more properly an issue for a jury to consider.  *Angie M.*, 37 Cal. App. 4th

15 at 1226.

16

17          3.1.3   Suffering of Extreme Emotional Distress

18

19          Horton avoids arguing that Plaintiff has not suffered extreme emotional distress.  Such an

20 argument would fail, since there is ample evidence that Plaintiff has experienced severe

21 emotional problems.  Rather, Horton argues that he was not the cause of Plaintiff's distress.

22 According to Horton, a "series of [Plaintiff's] antecedent and contemporaneous relationships, the

23 pre-existing conditions that drove her to compulsive sexual activity, speak to a disordered

24 personality that objectively was not the result of Horton's conduct."  (Horton Reply 19:4-7.)

25 This is yet another issue for a jury to decide.

26          Plaintiff presents evidence that Horton caused her distress.  For example, she submits the

27 testimony of her therapist that Plaintiff was diagnosed "as having been sexually abused by

28 Horton, causing her severe damage, evidenced by a sense of self loathing, low self esteem, loss

1  of hope and other issues." (PSMF ¶ 64.)  While Horton submits evidence tending to show that

2  Plaintiff suffered severe mental and emotional problems before their relationship, this evidence

3  does not compel summary judgment.  While Plaintiff might have been troubled before meeting

4  Horton, Plaintiff submits evidence that Horton caused her to experience severe emotional

5  distress.

6      Plaintiff's claim against Horton for intentional infliction of emotional distress survives

7  summary judgment.

8

9      **3.2    Plaintiff's Claim for Sexual Battery**

10

11     Horton argues that Plaintiff's claim against him for sexual battery must be dismissed.  To

12  establish a claim for sexual battery, a plaintiff must show that "the batterer intend[ed] to cause a

13  harmful or offensive contact and the batteree suffered a sexually offensive contact." *Jacqueline*

14  *R. v. Household of Faith Family Church, Inc.*, 97 Cal. App. 4th 198, 208 (2002) (quotation

15  marks omitted).  Under this standard, Horton argues that Plaintiff consented to the contact he

16  had with her, and that the contact was not intended to be or actually offensive.  (Horton's Mot.

17  17:5-7.)  Plaintiff responds that, "even if Doe could have legally consented to sex with Horton,

18  the evidence shows that the sexual contact was unwelcomed by Doe, that she did not consent,

19  and that Doe was coerced into engaging in sexual acts with Horton, raising a triable issue of

20  material fact." (Opposition to Horton's Motion 14:24-27.)  The Court agrees with Plaintiff that a

21  triable issue of fact exists.

22     As established in Section 1.2, Defendants cannot show as a matter of law that Plaintiff

23  consented to Horton's conduct.  Further, the Court recognized that there is enough evidence to

24  support Plaintiff's assertion that Horton coerced and manipulated her into having sex with him.

25  Thus, there is at least an issue of fact concerning whether Horton's conduct was offensive, and

26  there is no doubt that Horton intended to cause this contact.

27     Thus, this claim for sexual battery survives summary judgment.

28

### 3.3    Plaintiff's Claim for Assault

Horton next attacks Plaintiff's claim against him for assault.  He argues that this claim should fail because, when Plaintiff's engaged in sexual acts with Horton, she did not "reasonably believe that [s]he was about to be touched in a harmful or offensive manner."  *See* California Jury Instructions – Civil § 1301 (June 2009 Ed.)  The Court disagrees.  Plaintiff provides evidence that she was offended by Horton's sexual conduct with her, and that his contact with her caused her damage.  (*See, e.g.*, PSMF ¶ 64.)  Though Plaintiff's evidence is contradicted by other evidence submitted by the parties, Plaintiff's submissions need not be undisputed.  Her evidence is sufficient to create a triable issue of fact, and her claim for assault survives summary judgment.

### 3.4    Plaintiff's Claim for Violation of Civil Code Section 51.9

Horton argues that Plaintiff's claim for sexual harassment in violation of Civil Code Section 51.9 must be dismissed, and Plaintiff does not rebut this argument.  Thus, this claim fails.

### 3.5    Plaintiff's Claim for Gender Violence

Plaintiff asserts a claim against Horton for gender violence under California Civil Code section 52.4.  Horton argues that Plaintiff's evidence cannot satisfy the definition of gender violence.  But gender violence includes "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction."  Cal Civ. Code § 52.4(c)(2).  Since the Court has held that there is a triable issue of fact concerning whether Plaintiff was coerced into a sexual relationship with Horton, Plaintiff's claim for gender violence survives.

### 3.6     Plaintiff's Claim for Workplace Sexual Harassment

Horton's arguments concerning Plaintiff's claim for workplace sexual harassment are based on his contention that Plaintiff consented to sexual conduct with him.  But as the Court established in Section 1.2, there is a triable issue of fact concerning whether such consent existed.  Thus, Plaintiff's workplace sexual harassment claim survives Horton's Motion.

### 3.7     Plaintiff's Claim for Failure to Take Steps to Prevent Sexual Harassment

Horton argues that Plaintiff's claim against him for failure to take steps to prevent sexual harassment should be dismissed because there is no evidence that Horton was Plaintiff's employer.  (Horton Reply 23:11-12.)  Horton is correct, and this claim fails.

### 3.8     Plaintiff's Claim for Negligence

Horton argues that Plaintiff's claim for negligence should be dismissed because she has not submitted competent evidence that he caused her damages.  But as established in Section 3.1.3, Plaintiff has provided sufficient evidence on this issue to withstand summary judgment. Thus, Plaintiff's negligence claim survives.

1 **DISPOSITION**

2

3      Starbucks's Motion is GRANTED IN PART and DENIED IN PART.  Horton's Motion is

4 GRANTED IN PART and DENIED IN PART.

5

6 IT IS SO ORDERED.

7 DATED: December 18, 2009

8                                                            _____

9                                                            Andrew J. Guilford
                                                             United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28